# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

MARY KAY INC.,

        Plaintiff,

v.

AIDKOREA COMPANY INC.,

        Defendant.

**C.A. No.: 3:26-cv-1679**

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Mary Kay Inc. ("Mary Kay") brings this action against Defendant AIDKOREA COMPANY INC. selling under the brand "Mary & May" ("Defendant") for: (1) trademark infringement in violation of the LANHAM ACT, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) trademark dilution in violation of the LANHAM ACT, 15 U.S.C. § 1125(c); (3) cyberpiracy in violation of the LANHAM ACT, 15 U.S.C. § 1125(d)(1); (4) trademark dilution in violation of TEX. BUS. & COM. CODE § 16.103; (5) trademark infringement and unfair competition under Texas common law, and (6) patent infringement in violation of 35 U.S.C. § 271. Mary Kay brings this action to stop Defendant's unauthorized use of the confusingly similar mark "MARY & MAY" in connection with cosmetics and beauty products sold online at www.marynmay.com by Defendant. Defendant's use of the Mary & May designator is likely to cause consumers to incorrectly believe that Defendant's products are associated with, sponsored by, or endorsed by Mary Kay. Mary Kay also brings this action to stop Defendant's infringement of United States Patent No. 8,895,082 (the "'082 Patent"). In support of its complaint, Mary Kay alleges as follows:

1

**INTRODUCTION**

1.      In 1963 Mary Kay Ash launched Mary Kay. It began with four skincare products and a foundation. Over the past 60 years, Mary Kay has grown into a product line with nearly 800 skincare, color cosmetics, and signature fragrances in its global portfolio.

2.      Mary Kay's Global Academy, led by Chief Scientific Officer Dr. Lucy Gildea, is dedicated to the research of skin and nutritional science through collaborations with leading global institutions, dermatologists, researchers, and scientific and academic authorities. Mary Kay thoughtfully researches every product component and only selects high-quality, trustworthy ingredients. In fact, Mary Kay exceeds global regulations by restricting more than 1,300 ingredients worldwide. Mary Kay rigorously assesses each product's formula for safety, quality, and performance, and monitors and reviews emerging scientific data. In a typical year, Mary Kay spends millions of dollars and conducts more than 500,000 tests to ensure that every product meets the highest standards. For almost three decades, Mary Kay has been a leader in the development of testing methods, other than animal testing, to ensure product safety. Mary Kay does not conduct animal testing on its products or ingredients, and is committed to the elimination of animal testing worldwide. Many of Mary Kay's products are protected by its extensive patent portfolio.

3.      Mary Kay's products have received numerous awards and honors, including the 2026 Good Housekeeping Beauty Award, the Good Housekeeping Seal, the People en Español Star Product Awards 2025, and the People en Español Star Product Hall of Fame 2025. In short, Mary Kay ensures the integrity of its products as a matter of principle, and the beauty industry has recognized, and continues to recognize, that integrity.

4.      Defendant now seeks to improperly capitalize on Mary Kay's groundbreaking

2

products and longstanding reputation for excellence as explained in detail below.

## PARTIES

5.      Mary Kay is a corporation, organized under the laws of Delaware, with its principal place of business located at 16251 Dallas Parkway, Addison, Texas 75001.

6.      AIDKOREA COMPANY INC. is, upon information and belief, a foreign corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 2F NPS office, 13, Olympic-ro 35da-gil, Songpa-gu, Seoul, Republic of Korea (Postal Code) 05510.

7.      AIDKOREA COMPANY INC. has no known place of business in the United States and is not registered to do business in any U.S. state. Defendant conducts business in the United States, including within this District, by importing, offering for sale, selling, or distributing products that infringe Mary Kay's trademarks and patent.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367. Mary Kay's federal claims are predicated on 15 U.S.C. § 1114, 15 U.S.C. and § 1125, 35 U.S.C. § 271, and its claims arising under the laws of the State of Texas are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court has personal jurisdiction over Defendant because Defendant has purposefully directed business activities toward the United States and toward the State of Texas, including importing, offering for sale, selling, distributing, or otherwise placing into the stream of commerce products that infringe Mary Kay's trademarks and patent, with the expectation that such

3

products would be purchased or used in Texas and/or in this District. Defendant's acts have caused injury to Mary Kay within this District. Defendant has sold and is selling products under the Mary & May designator in Texas and the Northern District of Texas through the website www.marynmay.com. Defendant further injects its products into Texas and this District via its other websites and social media via www.marynmayglobal.com, www.instagram.com/marynmay_official, www.instagram.com/marynmay_global, www.tiktok.com/@marynmay_official, and www.youtube.com/@marynmay. Through these actions, Defendant has purposefully availed itself of the privilege of conducting activities within Texas, expressly aimed tortious activities toward Texas, and established sufficient minimum contacts with Texas.

10.    Defendant is a foreign corporation organized under the laws of the Republic of Korea. Personal jurisdiction is also proper under Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiff's claims arise under federal law, (b) Defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (c) exercising jurisdiction is consistent with the United States Constitution and laws.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mary Kay's claims occurred within this judicial district or, in the alternative, because Defendant is subject to personal jurisdiction in this district. Venue is also proper for the patent claims under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and, as a foreign defendant, may be sued in any judicial district. Because Defendant is a foreign entity, venue is proper in this District for all claims pursuant to 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued

in any judicial district.

## FACTUAL ALLEGATIONS
### Mary Kay and Its Trademarks

12.    Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and other related products. Mary Kay's products are sold in over thirty-five countries, including the United States, and the Mary Kay brand is recognized for its quality worldwide.

13.    Mary Kay products are promoted to consumers on its MaryKay.com website, print and digital catalogues, and various social media sites, among other media.

14.    Mary Kay products are sold to the public exclusively through Mary Kay Independent Beauty Consultants ("Consultants"), which currently number several hundreds of thousands in the U.S. Consultants market these products directly to consumers utilizing, among other direct sales methods, personal websites accessed through MaryKay.com where customers can shop, browse, and communicate directly with their Consultants.

15.    Mary Kay devotes a significant amount of time, energy, and resources to protecting the value of its brand, products, name, and reputation. Mary Kay first began using the MARY KAY® trademark in 1963. Since that time, Mary Kay has continuously used the MARY KAY® mark in commerce in connection with the sale of cosmetics, skincare, and other related types of beauty products, some of which are shown below:







16.    To promote and protect its intellectual property rights, Mary Kay has registered numerous trademarks with the United States Patent and Trademark Office. These trademarks (collectively, the "MARY KAY® Trademarks") include, but are not limited to:

| Mark | U.S. Trademark Reg. No. | Goods and Services |
|---|---|---|
| MARY KAY | 5202640 | IC 035: PROVIDING AN ONLINE COMPUTER WEB SITE FEATURING BUSINESS INFORMATION AND ARTICLES, PROMOTIONAL AND MARKETING INFORMATION AND MATERIALS, ALL IN THE FIELDS OF COSMETICS AND BEAUTY CARE PRODUCTS, AND THE DIRECT SALES OF COSMETICS AND BEAUTY CARE PRODUCTS; DISSEMINATION OF ADVERTISING MATERIALS; ORGANIZATION OF PROMOTIONAL EVENTS FOR COMMERCIAL OR ADVERTISING PURPOSES; BUSINESS DEVELOPMENT SERVICES, NAMELY, |

6

| | | PROVIDING SUPPORT FOR BUSINESS OF OTHERS |
|---|---|---|
| MARY KAY | 1215807 | IC 016: PRINTED BUSINESS SUPPLIES AND SALES AIDS-NAMELY, IDENTIFICATION CARDS, ADHESIVE IDENTIFICATION STICKERS, NOTE PAPER, ORDER FORMS, PLANNING SHEETS, AND DATE BOOKS. |
| MARY KAY | 1513319 | IC 005: ACNE MEDICATIONS, SPECIFICALLY ACNE TREATMENT GELS AND BLEMISH CONTROL TONERS. |
| MARY KAY | 1545983 | IC 003: COSMETICS, SPECIFICALLY CLEANSING CREAM, FRESHENER, MOISTURIZER, HAND CREAM. [ CLEANSING GEL, ] COLOGNE, EYE CREAM CONCENTRATE, WATERPROOF MASCARA, FOUNDATION, [ TRANSLUCENT POWDER, ] HAIR SHAMPOO, NIGHT CREAM, MOISTURE RICH MASK, BODY LOTION, SUNSCREEN LOTION, PURIFYING BAR, LIP GLOSS, EYE SHADOW, [ CREAM BLUSH, ] ANTI-AGING COMPLEX [, AND PROTEIN CONDITIONER ]. |
| MARY KAY | 1842599 | IC 003: BODY CARE PRODUCTS; NAMELY, BUFFING CREAMS, CLEANSING GELS, BODY LOTIONS, [ DUSTING POWDER; ] HAIR CARE PRODUCTS; NAMELY, SHAMPOOS, [ CONDITIONERS, STYLING GELS, FINISHING SPRAYS AND STYLING MOUSSE; ] SKIN CARE PRODUCTS; NAMELY, CLEANSING CREAMS, CLEANSING BARS, FACIAL SOAPS, FACIAL MOISTURE AND REVITALIZING MASKS, TONERS, SHAVE CREAMS, MOISTURIZERS, OIL CONTROL LOTIONS, OIL ABSORBERS, HAND CREAMS, CREAM AND LIQUID FOUNDATIONS, SKIN CREAMS; GLAMOUR AND BEAUTY PRODUCTS; NAMELY, EYE COLORS, EYE DEFINING PENCILS, EYEBROW PENCILS, MASCARA, LIPSTICKS, LIP GLOSS, LIP LINER PENCILS, CHEEK COLORS, |

7

| | | |
|---|---|---|
| | | ROUGE, LOOSE POWDER, PRESSED POWDER, FACIAL HIGHLIGHTER, BLEMISH CONCEALERS, NAIL CARE PREPARATIONS, NAIL COLORS; SUNSCREEN AND SUNBLOCK PREPARATIONS, TANNING LOTIONS AND NON-MEDICATED LIP PROTECTOR PREPARATIONS; AND FRAGRANCE PRODUCTS; NAMELY, COLOGNES AND COLOGNE SPRAYS, AND EMERY BOARDS.<br><br>IC 008: MANICURE IMPLEMENTS; NAMELY, NAIL BUFFERS [, CUTICLE PUSHERS ].<br><br>IC 009: [ [ AUDIOVISUAL SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS; NAMELY, AUDIOCASSETTE AND VIDEOCASSETTE TAPES FEATURING SALES TIPS, ADVICE AND TRAINING AND MOTIVATIONAL TOPICS ] ].<br><br>IC 016: PRINTED BUSINESS SUPPLIES AND SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS; NAMELY, BUSINESS ORGANIZER FOLDERS, LABELS, DECALS, GLAMOUR SHADE GUIDES, SALES FLIP CHARTS, PROMOTIONAL DECALS, PLANNING SHEETS, INSTRUCTIONAL BROCHURES, AND MAGAZINES AND PAMPHLETS CONTAINING COSMETIC, SKIN CARE, BEAUTY AND RELATED TOPICS; DISPOSABLE PAPER FACIAL CLOTHS; PLASTIC AND PAPER COSMETIC BAGS SOLD EMPTY.<br><br>IC 021: COSMETIC TRAYS AND CADDYS, LIPSTICK HOLDERS, EYELINER BRUSHES, RETRACTABLE EYE AND LIP BRUSHES, COSMETIC BRUSHES AND COSMETIC SPONGE TIP APPLICATORS. |
| MARY KAY | 2542184 | IC 003: BODY CARE PRODUCTS; NAMELY, BUFFING CREAMS, CLEANSING GELS, BODY LOTIONS, DUSTING POWDER; HAIR CARE |

8

| | | PRODUCTS; NAMELY, SHAMPOOS, [CONDITIONERS,] [STYLING GELS, FINISHING SPRAYS AND STYLING MOUSSE;] SKIN CARE PRODUCTS; NAMELY, CLEANSING CREAMS, CLEANSING BARS, FACIAL SOAPS, FACIAL MOISTURE AND REVITALIZING MASKS, TONERS, SHAVE CREAMS, MOISTURIZERS, OIL CONTROL LOTIONS, OIL ABSORBERS, HAND CREAMS, CREAM AND LIQUID FOUNDATIONS, SKIN CREAMS; GLAMOUR AND BEAUTY PRODUCTS; NAMELY, EYE COLORS, EYE DEFINING PENCILS, EYEBROW PENCILS, MASCARA, LIPSTICKS, LIP GLOSS, LIP LINER PENCILS, CHEEK COLORS, ROUGE, LOOSE POWDER, PRESSED POWDER, FACIAL HIGHLIGHTER, BLEMISH CONCEALERS, [NAIL CARE PREPARATIONS, NAIL COLORS;] SUNSCREEN AND SUNBLOCK PREPARATIONS, TANNING LOTIONS AND NON-MEDICATED LIP PROTECTOR PREPARATIONS; AND FRAGRANCE PRODUCTS; NAMELY, COLOGNES AND COLOGNE SPRAYS [; AND EMERY BOARDS]. <br><br> IC 008: [ [MANICURE IMPLEMENTS; NAMELY, NAIL BUFFERS, CUTICLE PUSHERS] ]. <br><br> IC 009: [ [ AUDIOVISUAL SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS;, NAMELY, AUDIOCASSETTE AND VIDEOCASSETTE TAPES FEATURING SALES TIPS, ADVICE AND TRAINING AND MOTIVATIONAL TOPICS ] ]. <br><br> IC 016: PRINTED BUSINESS SUPPLIES AND SALES AIDS FOR THOSE ENGAGED IN THE PROMOTION AND SALE OF COSMETICS, SKIN CARE, GLAMOUR AND LIKE PRODUCTS; NAMELY, BUSINESS ORGANIZER FOLDERS, LABELS, DECALS, GLAMOUR SHADE GUIDES, SALES FLIP CHARTS, PROMOTIONAL DECALS, PLANNING SHEETS, INSTRUCTIONAL BROCHURES, AND MAGAZINES AND PAMPHLETS CONTAINING COSMETIC, SKIN CARE, BEAUTY AND RELATED TOPICS DISPOSABLE PAPER FACIAL CLOTHS; |

| | | |
|---|---|---|
| | | PLASTIC AND PAPER COSMETIC BAGS SOLD EMPTY.<br><br>IC 021: COSMETIC TRAYS AND CADDYS, LIPSTICK HOLDERS, EYELINER BRUSHES, RETRACTABLE EYE AND LIP BRUSHES, COSMETIC BRUSHES AND COSMETIC SPONGE TIP APPLICATORS. |
| MARY KAY | 3470956 | IC 003: COSMETICS; NON-MEDICATED SKIN CARE PREPARATIONS; FRAGRANCES FOR PERSONAL USE. |
| MARY KAY | 1628275 | IC 016: PRINTED BUSINESS SUPPLIES AND SALES AIDS, NAMELY REMINDER POSTCARDS, NOTE PAPER, ORDER FORMS, DATE BOOKS, AND ART BOARDS FOR USE BY PRINTERS IN PRODUCING STATIONERY, LETTERHEADS, AND BUSINESS CARDS. |

17.    The registration for each of the MARY KAY® Trademarks is valid, subsisting, and in full force and effect. Pursuant to 15 U.S.C. § 1065, the MARY KAY® Trademarks serve as conclusive evidence of Mary Kay's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of Mary Kay's products identified in the registrations. *See* 15 U.S.C. § 1115(b).

18.    Mary Kay has invested millions of dollars in advertising and promoting the Mary Kay brand.

19.    Mary Kay actively uses and markets the MARY KAY® Trademarks in commerce throughout the United States, including in Texas.

20.    Due to the quality and exclusive distribution of Mary Kay's products, and because

10

Mary Kay is recognized as the source of high-quality products, the MARY KAY® Trademarks have substantial value.

21.    As a result of decades of extensive use, advertising, and sales, the MARY KAY® Trademarks are famous and widely recognized by the general consuming public of the United States.

**Defendant's Adoption of the Confusingly Similar Mary & May Designator**

22.    Defendant markets cosmetics, skincare, and beauty products—the same types of goods Mary Kay sells.

23.    Defendant obtained a trademark registration for **Mary&May 마리엔메이** in 2021 with the registration number 6360488.

24.    The goods and services listed in the registration for the Mary & May mark are "Cosmetics; Foundation; Shampoos; Body wash; Cleaning preparations; Cleaning preparations for household purposes; Cosmetics in the form of milks, lotions and emulsions; Essential oils; Exfoliant creams; Eye cream; Facial lotion; Make-up foundations; Massage lotions; Moisturizing milk; Non-medicated skin care preparations; Non-medicated toiletry preparations; Pet shampoos; Scented body spray; Skin whitening preparations; Tissues impregnated with cosmetic lotions."

25.    Defendant registered and uses one or more domain names incorporating a Mary & May designator (e.g., Mary & May and related derivations) that is confusingly similar to MARY KAY® Trademarks.

26.    Defendant sells products bearing the Mary & May designator through its website and online marketplaces, including Amazon and TikTok Shop.

27.    Examples of Defendant's products, website, and packaging are shown below:

11





28.    Defendant uses the Mary & May designator in commerce for at least the following classes of goods and services recited by 37 C.F.R. § 6.1:

3. Non-medicated cosmetics and toiletry preparations; non-medicated dentifrices; perfumes; bleaching preparations and other substances for laundry use; cleaning, polishing and abrasive preparations.

5. Pharmaceuticals, medical and veterinary preparations; sanitary preparations for medical purposes; dietetic food and substances adapted for medical or veterinary purposes, food for babies; dietary supplements for human beings and animals; adhesive plasters, materials for dressings; material for filling teeth, dental wax; disinfectants; preparations for destroying vermin; fungicides, herbicides.

9. Scientific, research, navigation, surveying, photographic, cinematographic, audiovisual, optical, weighing, measuring, signalling, detecting, testing, inspecting, life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling the distribution or use of electricity; apparatus and instruments for recording, transmitting, reproducing or processing sound, images or data; recorded and downloadable multimedia files, computer software, blank digital or analogue recording and storage media; mechanisms for coin-operated apparatus; cash registers, calculating devices; computers and computer peripheral devices; diving suits, divers' masks, ear plugs for divers, nose clips for divers, gloves for divers,

13

breathing apparatus for underwater swimming; fire-extinguishing apparatus.

16. Paper and cardboard; printed matter; bookbinding material; photographs; stationery and office requisites, except furniture; adhesives for stationery or household purposes; drawing materials and materials for artists; paintbrushes; instructional and teaching materials; plastic sheets, films and bags for wrapping and packaging; printers' type, printing blocks.

21. Household or kitchen utensils and containers; cookware and tableware, except forks, knives and spoons; combs and sponges; brushes, except paintbrushes; brush-making materials; articles for cleaning purposes; unworked or semi-worked glass, except building glass; glassware, porcelain and earthenware.

35. Advertising; business management, organization and administration; office functions.

29.     These products are marketed, offered for sale, and sold on the Mary & May website,

some of which are shown below:

| Category | Mary & May Products | | | |
|---|---|---|---|---|
| Acne-Related Products | Mary&May CICA Houttuynia Tea Tree Calming Mask | Mary&May Houttuynia Cordata+Tea Tree Cleansing Foam | Mary&May Vegan CICA Tea Tree AHA PHA Blemish Toner | Mary&May Vegan CICA TeaTree Soothing Wash off Pack |
| Cleanser-Related Products | Mary&May Rice Glutathione LHA Cleansing Oil | Mary&May White Collagen Cleansing Foam | Mary&May Houttuynia Cordata+Tea Tree Cleansing Foam | |

| | |
|---|---|
| Anti-Aging and Moisturizer-Related Products |  |
| Body Care-Related Products | |
| Sunscreen-Related Products | |

| Lip Gloss and Lip Care-Related Products |  |
| --- | --- |

30.   Defendant's Mary & May designator is visually, phonetically, and conceptually similar to the MARY KAY® Trademarks.

31.   The Mary & May designator and MARY KAY® Trademarks differ by only one letter and an ampersand symbol, share the same number of words, and are pronounced nearly identically.

32.   Defendant's branding, product categories, and marketing channels overlap almost identically with Mary Kay's.

### Likelihood of Consumer Confusion

33.   Defendant's use of the Mary & May designator is likely to cause consumer confusion as to source, affiliation, or sponsorship.

34.   Consumers encountering Mary & May products online are likely to believe they are associated with Mary Kay.

35.   For example, a local Bing.com search for "mary & may makeup near me" returns results for Mary Kay's website and local retailers above the Mary & May results on the search page:



36.     Consumers have actually confused Mary & May products as being sourced from Mary Kay by seeking customer support from Mary Kay for Mary & May products. Mary Kay has received inquiries from consumers asking for further information about Mary & May products via the Mary Kay consumer support webform on Mary Kay's website (www.MaryKay.com). That inquiry is as follows:

17



37.     The confusion is further confirmed by actual consumers discussing their confusion in an online beauty forum at https://www.reddit.com/r/AsianBeauty/comments/162e2ow/ thoughts_on_mary_may_essence/     and     https://www.reddit.com/r/AsianBeauty/comments/ 1e1kgrg/anyone_had_any_experience_with_mary_may/:

18





38.     Upon information and belief, Defendant adopted the Mary & May designator with knowledge of Mary Kay's longstanding rights and with the intent to cause such confusion.

**Defendant Is Infringing the Mary Kay Trademarks and Mary Kay
Has Suffered Substantial Harm as a Result of Defendant's Conduct**

39.     Mary Kay has not authorized Defendant to use the MARY KAY® Trademarks.

40.     Defendant is not, and has never been, a Mary Kay Independent Beauty Consultant or otherwise authorized to sell products bearing trademarks owned by Mary Kay.

41.     Through its advertisement and sales of the infringing products, Defendant is infringing the MARY KAY® Trademarks. Given that the infringing products are the types of goods within the class of goods covered by the MARY KAY® Trademarks, and the same type of good

that Mary Kay sells under the MARY KAY® Trademarks, consumers are likely to be and have been confused and wrongly believe that the infringing products were manufactured by Mary Kay or are in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay.

42.    Mary Kay is harmed in several respects by consumers wrongly believing that the infringing products—or, more generally, Defendant itself—are affiliated or associated with Mary Kay. First, unlike the products that it sells through its Consultants, Mary Kay has no control over the quality of the products that Defendant sells on its website or via third-party sellers under the Mary & May designator. Consumers who purchase such products from Defendant that are defective or of otherwise poor quality are likely to fault Mary Kay for their disappointing product experience, under the mistaken belief that the products were manufactured by or otherwise affiliated with Mary Kay.

43.    Consumers who believe that Defendant is affiliated with or approved by Mary Kay may also blame Mary Kay for unsatisfactory experiences they have with the online retail experience, such as negative experiences with customer support or the unavailability of products they believe are manufactured by or affiliated with Mary Kay.

44.    Mary Kay is also harmed by the erroneous belief that the specific infringing products are manufactured by or otherwise affiliated with Mary Kay.

45.    For all of these reasons, because of Defendant's unlawful activities, consumers are likely to be confused as to the source, affiliation, sponsorship or approval of these products to the detriment of Mary Kay. As a proximate result of Defendant's actions, Mary Kay has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales,

damage to the value of its intellectual property, harm to the goodwill associated with its family of brands, and damage to its existing and potential business relations.

46.     Mary Kay is entitled to injunctive relief because Defendant will otherwise continue to unlawfully infringe the MARY KAY® Trademarks and cause consumers to wrongly believe that the infringing products and Defendant are affiliated with Mary Kay. Defendant's ongoing illegal conduct has caused, and will continue to cause, irreparable harm to Mary Kay's reputation, goodwill, business relationships, intellectual property, and brand integrity.

47.     Defendant's disregard of Mary Kay's cease-and-desist letter shows that Defendant's conduct is knowing, intentional, willful, malicious, and wanton.

**Dilution of the Famous Mary Kay Trademarks**

48.     The MARY KAY® Trademarks are inherently distinctive and have acquired extraordinary fame through decades of nationwide use. Mary Kay has a presence in over 40 markets, with millions of Consultants around the world selling Mary Kay's iconic products. In fact, Mary Kay was named the "#1 Direct Selling Brand of Skin Care and Color Cosmetics in the World" by Euromonitor International for three years in a row between 2023 and 2025. https://www.3blmedia.com/news/one-two-three-peat-mary-kay-inc-named-1-direct-selling-brand-skin-care-and-color-cosmetics. Mary Kay has also been named "#1 Brand of Facial Make-Up in Latin America," "#1 Brand of Lip Products in Latin America," "#1 Brand of Color Cosmetics in Mexico," and "#1 Brand of Skincare and Color Cosmetics in Mexico." *Id.* Mary Kay was also recently ranked #2 on Forbes 2026 Best Customer Service List and #8 on Forbes 2026 Best Brands for Social Impact. https://www.forbes.com/lists/best-customer-service/; https://www.forbes.com/lists/best-brands-social-impact/.

49.     Defendant's use of the highly similar Mary & May designator is likely to blur the distinctiveness of the MARY KAY® Trademarks by creating additional, unauthorized associations with similar-sounding beauty products.

50.     Defendant's lower-quality or unregulated products also threaten to tarnish the reputation of the MARY KAY® Trademarks and Mary Kay brand.

51.     Defendant's conduct has caused and will continue to cause irreparable harm to Mary Kay's famous MARY KAY® Trademarks.

**Mary Kay's Patented Technology**

52.     Mary Kay incorporates by reference the preceding paragraphs, as if set forth herein.

53.     Mary Kay's cosmetic technologies are protected by various patents, including U.S. Patent No. 8,895,082 (the "'082 Patent").

54.     A copy of the '082 Patent is attached as Exhibit 1.

55.     Mary Kay owns, by assignment, all right, title, and interest in and to the '082 Patent, including the right to collect for past damages.

56.     The '082 Patent is entitled "Skin Care Formulations."

57.     The '082 Patent was filed on March 24, 2014.

58.     The '082 Patent claims priority to U.S. Patent Application No. 13/237,573, filed on September 20, 2011, which is a continuation of U.S. Patent Application No. 12/871,557, filed August 30, 2010, which claims priority to U.S. Provisional Patent Application No. 61/238,001, filed August 28, 2009.

59.     The '082 Patent is valid and enforceable under United States Patent Laws (35 U.S.C. §§ 1, et. seq.).

60. Defendant knew of the '082 Patent at least as of May 15, 2026. Ex. 2.

**Defendant's Infringement of the '082 Patent**

61. Defendant makes, sells, offers to sell, and/or imports the product "Mary&May Vegan Calendula Peptide Ageless Sleeping Mask" (the "Accused Product") that infringes at least one or more of the claims of the '082 Patent. An illustration of the Accused Product is shown below:



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

62. The Accused Product contains palmitoyl tetrapeptide 7, water, glycerin, butylene glycol, dipropylene glycol, and sodium phytate as shown in the ingredient list:



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

63.    Sodium phytate is a chelating agent.

64.    Dipropylene glycol is a moisturizing agent.

65.    Dipropylene glycol is a humectant.

66.    The Accused Product is not a sunless tanning composition. For example, Mary & May does not advertise it as such or otherwise suggest that the product tans the skin.

67.    Defendant claims that "[i]f you apply [the Accused Product] thickly and go to bed, calendula and peptides will restore damaged skin overnight and make it moist with sufficient moisture."

24



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

68.    As a "key selling point," Defendant claims that the Accused Product contains "25 types of peptides that prevent aging, induces collagen synthesis, and delivers essential health ingredient to the dermis to exert anti-aging effects."



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

69.    Defendant instructs its customers to topically apply the Accused Product to their skin.



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

27

70.    Defendant's customers topically apply the Accused Product to their skin.



https://marynmay.com/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)

71.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72.     Mary Kay owns the MARY KAY® Trademarks.

73.     Mary Kay has registered the MARY KAY® Trademarks with the United States Patent and Trademark Office (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640).

74.     The registrations of the MARY KAY® Trademarks are valid, subsisting, and in full force and effect.

75.     Pursuant to 15 U.S.C. § 1065, Mary Kay's right to use the MARY KAY® Trademarks has become incontestable. As a result, pursuant to 15 U.S.C. § 1115(b), Mary Kay's registrations constitute conclusive evidence of Mary Kay's ownership of the marks and of its exclusive right to use the marks in commerce in connection with the sale and distribution of cosmetic products.

76.     Defendant has willfully and knowingly used, and continues to use, the Mary & May designator in commerce to advertise and sell goods covered by the MARY KAY® Trademarks.

77.     Defendant is not, and has never been, a Mary Kay Independent Beauty Consultant.

78.     Mary Kay has never authorized Defendant to use the MARY KAY® Trademarks or any other Mary Kay trademarks.

79.     Defendant's use of the Mary & May designator in connection with its unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products or Defendant itself emanate from or are in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay.

80.     As a proximate result of Defendant's actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to

be proven at trial.

81.     Mary Kay is entitled to recover its damages caused by Defendant's infringement of the MARY KAY® Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

82.     Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's infringement. Unless Defendant is permanently enjoined, Mary Kay will suffer immediate and irreparable harm.

83.     Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Mary Kay Trademarks.

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**15 U.S.C. § 1125(a)(1)(A)**

84.     Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     Mary Kay owns the MARY KAY® Trademarks.

86.     Mary Kay has registered the MARY KAY® Trademarks with the United States Patent and Trademark Office (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640).

87.     The registrations of the MARY KAY® Trademarks are valid, subsisting, and in full force and effect.

88.     Pursuant to 15 U.S.C. § 1065, Mary Kay's right to use the MARY KAY® Trademarks has become incontestable. As a result, pursuant to 15 U.S.C. § 1115(b), Mary Kay's

registrations constitute conclusive evidence of Mary Kay's ownership of the marks and of its exclusive right to use the marks in commerce in connection with the sale and distribution of cosmetic products.

89.     Defendant has willfully and knowingly used, and continues to use the Mary & May designator, to cause mistake, or to deceive as to the affiliation, connection, or association of the goods it sells under that mark with the MARY KAY® Trademarks that Mary Kay uses to sell its goods in commerce.

90.     Defendant is not, and has never been, a Mary Kay Independent Beauty Consultant.

91.     Mary Kay has never authorized Defendant to use the MARY KAY® Trademarks or any other Mary Kay trademarks.

92.     Defendant has willfully and knowingly used, and continues to use, the Mary & May designator in commerce to advertise and sell goods covered by the MARY KAY® Trademarks.

93.     In connection with the sales of these goods, Defendant is using words, terms, names, and symbols which are likely to deceive consumers into wrongly believing that the goods were manufactured by Mary Kay or are in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay. Specifically, Defendant sells goods under a designation that is identical to the MARY KAY® Trademarks, and which are the same type of goods that Mary Kay sells under the MARY KAY® Trademarks.

94.     As a proximate result of Defendant's actions, Mary Kay has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial. Defendant has also completed sales and earned revenue that it would not have earned if consumers were not deceived into believing that products Defendant sells are

31

manufactured by or otherwise affiliated with Mary Kay.

95.    Mary Kay is entitled to recover its damages caused by Defendant's unfair competition and disgorge Defendant's profits from its unjust enrichment.

96.    Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's unfair competition, and unless Defendant is permanently enjoined, Mary Kay will suffer irreparable harm.

97.    Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith engaged in unfair competition.

### THIRD CAUSE OF ACTION
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

98.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

99.    One or more products bearing the MARY KAY® Trademarks have been sold to the public since 1963. For over 60 years, Mary Kay has been recognized by consumers as the source of high-quality products bearing the MARY KAY® Trademarks, beginning with cosmetic products and expanding to many other types of products.

100.    For example, U.S. Trademark Registration No. 0817516 was first filed with the United States Patent and Trademark Office in 1964 and was registered in 1966. Since that time, the MARY KAY® Trademarks have been filed and registered with respect to numerous categories of goods and services.

101.    Mary Kay is the owner of the MARY KAY® Trademarks and has registered the

32

trademarks with the United States Patent and Trademark Office (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640).

102. The MARY KAY® Trademarks are valid, subsisting, and in full force and effect.

103. Mary Kay has expended substantial time, effort, money, and resources advertising and promoting products and services under the MARY KAY® Trademarks. As a result of Mary Kay's efforts, the MARY KAY® Trademarks are the means by which Mary Kay products and services are distinguished from others in the marketplace.

104. Mary Kay markets, advertises, and sells products bearing the MARY KAY® Trademarks throughout the United States.

105. Mary Kay has implemented legitimate and substantial quality controls that it requires all Consultants to follow to protect the Mary Kay name and brand.

106. Consumers throughout the United States recognize and associate the Mary Kay name with quality.

107. Because of the quality, durability, and dependability of Mary Kay products and Mary Kay's use of the MARY KAY® Trademarks, consumers trust the Mary Kay name and Mary Kay products.

108. The MARY KAY® Trademarks are inherently distinctive, and as a result of Mary Kay's long and continuous use of the MARY KAY® Trademarks, they have acquired fame and well-known status with purchasers and the public in association with Mary Kay's products and services.

109. Mary Kay is widely recognized by the general consuming public as the designated source of goods bearing the MARY KAY® Trademarks.

110. For these reasons, the MARY KAY® Trademarks have been famous, distinctive, and a widely recognized mark by the consuming public for decades.

111. Defendant began using the Mary & May designator in commerce well after the MARY KAY® Trademarks became famous.

112. Defendant's use of the Mary & May designator is a commercial use in commerce in connection with the sale, marketing, and advertising of cosmetics and skincare products.

113. Defendant's use of the Mary & May designator is likely to cause dilution by blurring of the MARY KAY® Trademarks within the meaning of 15 U.S.C. § 1125(c)(2)(B).

114. Blurring is likely because Defendant's use of the Mary & May designator impairs the distinctiveness of the MARY KAY® Trademarks as unique identifiers of Mary Kay's goods.

115. The following non-exclusive statutory factors weigh strongly in favor of a finding of dilution by blurring:

**a. Degree of Similarity**

The Mary & May designator is highly similar to MARY KAY® Trademarks in sight, sound, pronunciation, structure, cadence, and overall commercial impression.

**b. Distinctiveness of the Famous Mark**

The MARY KAY® Trademarks are inherently and commercially distinctive.

**c. Substantially Exclusive Use**

Mary Kay has substantially exclusive rights in and use of the MARY KAY® Trademarks in the cosmetics and skincare market.

**d. Degree of Recognition**

The MARY KAY® Trademarks enjoy a high degree of recognition among U.S. consumers.

### e. Intent to Create an Association

Defendant adopted the Mary & May designator with the intent to create an association with Mary Kay and the famous Mary Kay brand, as evidenced by Defendant's use of a nearly identical personal-name construction and its sale of directly competing cosmetic products.

### f. Actual Association

Consumers are likely to and have associated Mary & May with Mary Kay, particularly when encountering Defendant's products online without contextual clarification.

116. Defendant's use diminishes the ability of the MARY KAY® Trademarks to serve as a singular and powerful source identifier.

117. Defendant's use of the Mary & May designator is also likely to cause dilution by tarnishment under 15 U.S.C. § 1125(c)(2)(C).

118. Defendant's products are marketed and sold in a manner that harms the reputation of the MARY KAY® Trademarks by creating negative associations as to product quality, safety, consistency, efficacy, and brand integrity.

119. Upon information and belief, Defendant's cosmetics and skincare products:

a. are not subject to the same quality control standards as Mary Kay's products;

b. are sold through online marketplaces where counterfeit, expired, misbranded, or improperly stored cosmetic products are common; and

c. have generated consumer complaints, reviews, or confusion regarding quality and authenticity.

120. Defendant's unauthorized use of a designator so closely resembling the MARY KAY® Trademarks exposes Mary Kay's famous MARY KAY® Trademarks to reputational harm through association with products over which Mary Kay has no control.

35

121.     Such association harms the prestige, trust, and goodwill symbolized by the MARY KAY® Trademarks and constitutes dilution by tarnishment.

122.     Defendant's dilution of the MARY KAY® Trademarks has been willful, intentional, and in bad faith.

123.     Defendant knew or should have known of the fame of the MARY KAY® Trademarks and nonetheless proceeded to adopt and use the Mary & May designator.

124.     Defendant's actions have caused and will continue to cause irreparable harm to Mary Kay for which there is no adequate remedy at law.

125.     Mary Kay is entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c)(1) to prevent further dilution.

126.     Because Defendant acted willfully, Mary Kay is entitled to monetary relief, disgorgement of profits, costs, and attorneys' fees.

## FOURTH CAUSE OF ACTION
### Trademark Dilution
### TEX. BUS. & COM. CODE § 16.103

127.      Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128.     One or more products bearing the MARY KAY® Trademarks have been sold to the public since 1963. For more than 60 years, Mary Kay has been recognized by consumers as the source of high-quality products bearing the MARY KAY® Trademarks, beginning with cosmetics products and expanding to many other types of products.

129.     For example, U.S. Trademark Registration Nos. 0817516 was first filed with the United States Patent and Trademark Office in 1964 and registered in 1966. Since that time, the

36

MARY KAY® Trademarks have been filed and registered with respect to numerous categories of goods and services.

130. Mary Kay is the owner of the MARY KAY® Trademarks and has registered the trademarks with the United States Patent and Trademark Office (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640).

131. The MARY KAY® Trademarks are valid, subsisting, and in full force and effect.

132. Mary Kay has expended substantial time, effort, money, and resources advertising and promoting products and services under the MARY KAY® Trademarks. As a result of Mary Kay's efforts, the MARY KAY® Trademarks are the means by which Mary Kay products and services are distinguished from others in the marketplace.

133. Mary Kay markets, advertises, and sells products bearing the MARY KAY® Trademarks throughout the United States, including within the State of Texas.

134. Mary Kay has implemented legitimate and substantial quality controls that it requires all Consultants and authorized sellers to follow to protect the Mary Kay name and brand.

135. Consumers in Texas and throughout the United States recognize and associate the Mary Kay name with quality.

136. Because of the quality, durability, and dependability of Mary Kay products and Mary Kay's long-standing use of the MARY KAY® Trademarks, consumers trust the Mary Kay name and Mary Kay products.

137. The MARY KAY® Trademarks are inherently distinctive, and as a result of Mary Kay's long and continuous use of the MARY KAY® Trademarks, they have acquired fame and well-known status with purchasers and the public in association with Mary Kay's products and

services.

138.    Mary Kay is widely recognized by the general consuming public in Texas as the designated source of goods bearing the MARY KAY® Trademarks.

139.    For these reasons, the MARY KAY® Trademarks have been famous, distinctive, and widely recognized by consumers in the State of Texas for decades.

140.    Defendant began using the Mary & May designator in commerce well after the MARY KAY® Trademarks became famous and well known in Texas.

141.    Defendant's use of the Mary & May designator constitutes a commercial use in commerce in connection with the sale, marketing, and advertising of cosmetics and skincare products.

142.    Defendant's use of the Mary & May designator is likely to dilute the distinctive quality of the MARY KAY® Trademarks in violation of TEX. BUS. & COM. CODE § 16.103, regardless of the presence or absence of actual or likely confusion, competition, or actual economic injury.

143.    Defendant's use of the Mary & May designator is likely to cause dilution by blurring of the MARY KAY® Trademarks.

144.    Blurring is likely because Defendant's use of the Mary & May designator impairs the distinctiveness of the MARY KAY® Trademarks as a unique identifier of Mary Kay's goods.

145.    The following factors weigh strongly in favor of a finding of dilution by blurring under Texas law:

**a. Degree of Similarity**

The Mary & May designator is highly similar to the MARY KAY® Trademarks in sight, sound, pronunciation, structure, cadence, and overall

38

commercial impression.

**b. Distinctiveness of the Famous Mark**

The MARY KAY® Trademarks are inherently and commercially distinctive.

**c. Substantially Exclusive Use**

Mary Kay has substantially exclusive rights in and use of the MARY KAY® Trademarks in the cosmetics and skincare market.

**d. Degree of Recognition**

The MARY KAY® Trademarks enjoy a high degree of recognition among consumers in Texas.

**e. Intent to Create an Association**

Defendant adopted the Mary & May designator with the intent to create an association with Mary Kay and the famous Mary Kay brand, as evidenced by Defendant's use of a nearly identical personal-name construction and its sale of directly competing cosmetic products.

**f. Actual Association**

Consumers are likely to and have associated the Mary & May designator with Mary Kay, particularly when encountering Defendant's products online without contextual clarification.

146. Defendant's use of the Mary & May designator diminishes the ability of the MARY KAY® Trademarks to serve as a singular and powerful source identifier and constitutes dilution by blurring.

147. Defendant's use of the Mary & May designator is also likely to cause dilution of the MARY KAY® Trademarks by tarnishment.

148. Defendant's products are marketed and sold in a manner that harms the reputation of the MARY KAY® Trademarks by creating negative associations as to product quality, safety,

consistency, efficacy, and brand integrity.

149.    Upon information and belief, Defendant's cosmetics and skincare products:

a. are not subject to the same quality control standards as Mary Kay's products;

b. are sold through online marketplaces where counterfeit, expired, misbranded, or improperly stored cosmetic products are common; and

c. have generated consumer complaints, reviews, or confusion regarding quality and authenticity.

150.    Defendant's unauthorized use of a designator so closely resembling the MARY KAY® Trademarks exposes Mary Kay's famous MARY KAY® Trademarks to reputational harm through association with products over which Mary Kay has no control.

151.    Such association harms the prestige, trust, and goodwill symbolized by the MARY KAY® Trademarks and constitutes dilution by tarnishment under Texas law.

152.    Defendant's dilution of the MARY KAY® Trademarks has been willful, intentional, and in bad faith.

153.    Defendant knew or should have known of the fame of the MARY KAY® Trademarks in Texas and nonetheless proceeded to adopt and use the Mary & May designator.

154.    Defendant's actions have caused and will continue to cause irreparable harm to Mary Kay, for which there is no adequate remedy at law.

155.    Mary Kay is entitled to injunctive relief pursuant to TEX. BUS. & COM. CODE § 16.103 to prevent further dilution.

156.    Because Defendant acted willfully, Mary Kay is entitled to all available relief, including injunctive relief, monetary relief, attorneys' fees, and costs as permitted by law.

**FIFTH CAUSE OF ACTION**
**Cyberpiracy / Cybersquatting**
**15 U.S.C. § 1125(d)**

157.    Mary Kay re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

158.    Mary Kay is the owner of the famous and distinctive MARY KAY® Trademarks (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640), which were registered, became widely recognized, and acquired substantial goodwill long before Defendant registered and used the infringing domain names described below.

159.    The MARY KAY® Trademarks are distinctive and famous within the meaning of 15 U.S.C. § 1125(d).

160.    Defendant is a foreign entity that conducts business in the United States through an interactive website and through U.S. based online marketplaces, including by marketing and selling cosmetics and skincare products bearing the Mary & May designator to U.S. consumers.

161.    Defendant registered, uses, and controls one or more domain names that incorporate or are confusingly similar to the MARY KAY® Trademarks, including domain names prominently featuring the Mary & May designation, including: www.marynmay.com and www.marynmayglobal.com (collectively, the "Infringing Domain Name(s)").

162.    The Infringing Domain Name(s) are confusingly similar to the MARY KAY® Trademarks in visual appearance, phonetic sound, structure, cadence, and overall commercial impression.

163.    Defendant registered and began using the Infringing Domain Name(s) well after

41

the MARY KAY® Trademarks became distinctive and famous.

164. Defendant uses the Infringing Domain Name(s) to advertise, market, and sell cosmetics and skincare products, including products that directly compete with Mary Kay's products.

165. Defendant's use of the Infringing Domain Name(s) is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, affiliation, or approval of Defendant's goods and services.

166. Defendant registered and used the Infringing Domain Name(s) with a bad-faith intent to profit from the goodwill associated with the MARY KAY® Trademarks, in violation of 15 U.S.C. § 1125(d)(1)(A).

167. Defendant's bad-faith intent to profit is demonstrated by numerous statutory and non-statutory factors, including but not limited to the following:

**a. Absence of Trademark Rights**

Defendant has no trademark, intellectual property, or other lawful rights in the MARY KAY® Trademarks.

**b. Fame and Distinctiveness of the Mark**

At the time of registration of the Infringing Domain Name(s), the MARY KAY® Trademarks were highly distinctive and famous, as pleaded in the dilution-by-blurring allegations incorporated herein.

**c. Intent to Create an Association**

Defendant adopted and used the Mary & May designation—both as a trademark and as part of the Infringing Domain Name(s)—with the intent to create an association with Mary Kay and the famous MARY KAY® brand, as further evidenced by Defendant's sale of directly competing cosmetic products.

**d. Intent to Divert Consumers for Commercial Gain**

42

Defendant intended to divert Internet users seeking Mary Kay's official products or websites to Defendant's website for commercial gain by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement.

### e. Commercial Use of the Domain Name

Defendant uses the Infringing Domain Name(s) for purely commercial purposes, including the marketing and sale of cosmetics and skincare products.

### f. Knowledge of Mary Kay's Rights

Defendant knew or should have known of the fame, distinctiveness, and long-standing use of the MARY KAY® Trademarks at the time the Infringing Domain Name(s) were registered and used.

168.    Defendant's registration and use of the Infringing Domain Name(s) constitute cybersquatting and cyberpiracy.

169.    Defendant's conduct has caused and will continue to cause irreparable harm to Mary Kay, including loss of control over its brand, dilution of its trademark rights, and ongoing consumer confusion.

170.    Mary Kay has no adequate remedy at law.

171.    Mary Kay is entitled to injunctive relief prohibiting Defendant from continuing to use, register, or traffic in the Infringing Domain Name(s).

172.    Mary Kay is further entitled to an order requiring the transfer or cancellation of the Infringing Domain Name(s) pursuant to 15 U.S.C. § 1125(d)(1)(C).

173.    Because Defendant acted willfully and with bad-faith intent to profit, Mary Kay is entitled to statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117(d).

## SIXTH CAUSE OF ACTION
### Texas Common Law Trademark Infringement and Unfair Competition

174.    Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

175.    This claim arises under the laws of the State of Texas.

176.    Mary Kay owns the MARY KAY® Trademarks (U.S. Trademark Registration Nos. 1215807, 1513319, 1545983, 1628275, 1842599, 2542184, 3470956, and 5202640).

177.    Mary Kay has registered the MARY KAY® Trademarks with the United States Patent and Trademark Office.

178.    The MARY KAY® Trademarks are valid and subsisting trademarks in full force and effect.

179.    Defendant has willfully and knowingly used, and continues to use, the MARY KAY® Trademarks in commerce for the purpose of selling products on the Internet without Mary Kay's consent.

180.    The products that Defendant sells bearing the Mary & May designator are not authorized for sale by Mary Kay.

181.    Defendant is not, and has never been, a Mary Kay Independent Beauty Consultant.

182.    Mary Kay has never authorized Defendant to use the MARY KAY® Trademarks or any other Mary Kay trademarks.

183.    Defendant's use of the Mary & May designator in connection with its unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products or Defendant itself emanate from or are in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay.

44

184.    As a proximate result of Defendant's actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

185.    Mary Kay is entitled to recover its damages caused by Defendant's infringement of the MARY KAY® Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

186.    In harming Mary Kay, Defendant has acted with willful misconduct and actual malice. Accordingly, Mary Kay is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 8,895,082
### 35 U.S.C. § 271(b)

187.    Mary Kay incorporates by reference the preceding paragraphs, as if set forth herein.

188.    Claim 1 of the '082 Patent recites:

1. A method of firming skin or reducing the appearance of fine lines or wrinkles comprising topically applying, to skin in need thereof, a composition comprising:

(a) palmitoyl tetrapeptide 7; and

(b) a dermatologically acceptable vehicle comprising:

(i)      water;

(ii)     glycerin;

(iii)    butylene glycol;

(iv)     propylene glycol; and

(v)      a chelating agent,

wherein topical application of the composition to the skin firms the skin or reduces the appearance of fine lines or wrinkles, and wherein

45

the composition is not a sunless tanning composition.

189. Defendant's customers perform all of the steps of the method of at least Claim 1 of the '082 Patent without Mary Kay's permission.

190. Defendant actively induces its customers to directly infringe at least Claim 1 of the '082 Patent literally or under the doctrine of equivalents.

191. Defendant instructs its customers to perform at least the method of Claim 1 of the '082 Patent.

192. Specifically, Defendant instructs its customers to topically apply the Accused Product, which is a composition comprising palmitoyl tetrapeptide 7 and a dermatologically acceptable vehicle comprising water, glycerin, butylene glycol, dipropylene glycol, and a chelating agent (e.g., sodium phytate).

193. As marketed by the Defendant, the topical application of the Accused Product at least reduces the appearance of fine lines or wrinkles (e.g., prevents aging, induces collagen synthesis, and exerts anti-aging effects) or firms skin (e.g., induces collagen synthesis, and plumping skin).



https://marynmay.com/collections/peptide/products/mary-may-calendula-peptide-ageless-sleeping-mask-110g



Amazon.com : Mary&May Vegan Calendula Peptide Ageless Sleeping Mask (2,200ppm Real Petals + 25 Peptides) – Overnight Hydrating Gel Face Mask with Ceramide & Hyaluronic Acid, Soothing 3.7 fl oz : Health & Household

194.    The Accused Product is not a sunless tanning composition.

195.    Dipropylene glycol is insubstantially different from propylene glycol. On information and belief, dipropylene glycol and propylene glycol are both moisturizing agents.

196.    Defendant knew of the '082 Patent as of May 15, 2026.

197.    Based on Defendant's receipt of this letter, Defendant knew that its customers' use of the Accused Product would infringe at least Claim 1 of the '082 Patent.

198.    Defendant's acts of infringement have caused and continue to cause damages to Mary Kay, and Mary Kay is entitled to recover from Defendant the damages it has sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention of the '082 Patent, together with interests and costs as fixed by the Court.

**CONDITIONS PRECEDENT**

199.    All conditions precedent to Mary Kay's claims for relief, if any, have occurred or have been performed.

**REQUEST FOR ATTORNEYS' FEES**

200.    Mary Kay is entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Mary Kay hereby seeks such recovery from Defendant of all its reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

**JURY DEMAND**

201.    Mary Kay demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Mary Kay prays for relief and judgment as follows:

A.    Judgment in favor of Mary Kay and against Defendant in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, exemplary damages, and pre-judgment and post-judgment interest as permitted by law;

B.    That a permanent injunction be issued enjoining Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") as follows:

i)    Prohibiting the Enjoined Parties from advertising or selling, through the Internet or through non-Internet channels, the infringing products or any other product under the Mary & May brand or designator;

49

ii)     Prohibiting the Enjoined Parties from using the Mary & May designator in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to their sales of the infringing products or any other products bearing the Mary & May designator including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, and sales receipts;

iv)     Requiring the Enjoined Parties to provide complete details regarding their inventory of the infringing products and the quantity of infringing products they have produced and sold;

v)      Requiring the Enjoined Parties to permanently cease and desist from using, registering, and applying to register any names, marks, or other product designations containing "Mary & May" or any other closely related designations for beauty or skincare products or related goods and services;

vi)     Requiring the Enjoined Parties to take all action to remove the Enjoined Parties' websites; and

vii)    Requiring the Enjoined Parties to take all action to remove all products bearing the Mary & May designator or similar designators from all third-party retailer websites and storefronts.

C.   A judgment that Defendant has infringed and continues to infringe the '082 Patent;

D.   A judgment and order requiring Defendant to pay Mary Kay monetary damages sufficient to compensate Mary Kay for Defendant's infringement of the '082 Patent, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

E.   An award of enhanced damages pursuant to 35 U.S.C. § 284;

F.   A judgment and order finding this to be an exceptional case under 35 U.S.C. § 285;

G.   A permanent injunction against Defendant to prevent Defendant's making, using, selling, offering to sell, or importing any product covered by the '082 Patent and to prevent Defendant's inducing infringement of the '082 Patent;

50

H.   In lieu of an injunction, an award of a compulsory forward royalty;

I.   An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law, costs, and expenses;

J.   A judgment and order requiring Defendant to pay Mary Kay's pre-judgment and post-judgment interest on the damages award, to the full extent allowed under the law;

K.   An order for an accounting of damages; and

L.   Such other and further relief as the Court deems just, equitable and proper.

DATE: May 22, 2026                    Respectfully submitted,


                                      **GREENBERG TRAURIG, LLP**

                                      */s/ Ashley N. Moore*

                                      Ashley N. Moore
                                      State Bar No. 24074748
                                      Ashley.Moore@gtlaw.com
                                      Phillip Aurentz
                                      State Bar No. 24059404
                                      Phillip.Aurentz@gtlaw.com
                                      Zachary Ellis
                                      State Bar No. 24122606
                                      Zak.Ellis@gtlaw.com

                                      2200 Ross Avenue, Suite 5200
                                      Dallas, TX 75201

                                      *Attorneys for Plaintiff Mary Kay Inc.*

52